# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:19-cr-374 (RDM) |
| | ) | |
| MOHAMMAD "MOE" DIAB, and | ) | |
| RANI EL-SAADI, | ) | |
| | ) | |
| Defendants. | ) | |

## GOVERNMENT'S MOTION TO CONTINUE TRIAL AND
## OPPOSITION TO DEFENDANTS' REQUEST FOR SEVERANCE

The United States of America, by and through undersigned counsel, hereby moves this Court to deny the defendants' request for severance. The government further asks the Court to vacate the trial date currently set for December 6, 2021, grant a 60-day continuance of the proceeding, and exclude the time within which a trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* (hereinafter, "the STA"). A continuance is necessary to permit the government sufficient time to produce outstanding materials from the District of Massachusetts and materials from active filter-team reviews.

Proceeding with trial on December 6, 2021—as defendant El-Saadi requests, but before the government receives and has a chance to turn over materials potentially relevant to this case—impairs the government's ability to comply with its disclosure obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). And because defendant El-Saadi's recent offer to waive his *Brady* rights may be deemed unenforceable in the D.C. Circuit, it does not bolster his present request for an immediate trial. Lastly, severance is not warranted because the defendants have not met their heavy burden of establishing prejudice to a specific trial right.

**RELEVANT BACKGROUND**

On November 7, 2019, the grand jury returned an Indictment charging eight defendants, including Mohammad Diab and Rani El-Saadi, with conspiracy to commit offenses against the United States, in violation of 18 U.S.C. § 371, and with making conduit campaign contributions, in violation of 52 U.S.C. §§ 30122 and 30109, among other offenses.  Trial against Mohammad Diab and Rani El-Saadi is currently set for December 6, 2021.  During a November 22, 2021, teleconference, the Court directed that the government file a brief on (1) whether defendant El-Saadi can waive his right to potential outstanding *Brady* and impeachment materials, and (2) whether the defendants' request for severance should be granted.

Although the prosecution team has produced all discovery now in its possession in this matter, there remain three buckets of discovery that the prosecution team plans to produce once the materials are in its possession and copied: (1) materials from a separate criminal matter handled by a separate prosecution team in the District of Massachusetts, Case No. 1:21-cr-10250 (D. Mass.), (2) a subset of the D. Mass. discovery—to include communications obtained from Andy Khawaja's and defendant Diab's email accounts at Allied Wallet, Inc.—being reviewed for attorney-client privilege by a D. Mass. filter team; and (3) a subset of the D. Mass. discovery—to include communications obtained from Rudy Dekermenjian's email account at Allied Wallet, Inc.—being reviewed for attorney-client privilege by a Criminal Division filter team.  The prosecution team received the first bucket of materials on Friday, November 19, 2021.  Litigation support is currently copying those materials for disclosure to the defendants—which will likely take place before December 6, 2021.  The prosecution team does not presently have access to the

latter two buckets of discovery.  It is unlikely that non-privileged materials from the filter reviews will be available to the prosecution team to produce before December 6, 2021.[1]

## ARGUMENT

For the reasons described below, the United States seeks to vacate the trial date and continue this matter to permit the government to complete its collection and production of discoverable materials pursuant to Federal Rule of Criminal Procedure 16(a) and *Brady*.  Although the prosecution team has been diligent in meeting and exceeding its discovery obligations, full discovery will not be completed by December 6, 2021, because the prosecution team does not yet possess the materials presently under review by the filter teams and because the District Courts in Massachusetts and the District of Columbia may have to weigh in to resolve any privilege disagreements that arise between the filter teams and Khawaja's counsel in the near future.  Although defendant El-Saadi states that he will waive his right to all outstanding *Brady* and impeachment evidence if the current trial date stands,[2] the D.C. Circuit may not recognize such a waiver as enforceable.  That places the government in an uncertain situation because the D.C. Circuit may later determine that the prosecution team had a non-waivable duty to continue producing *Brady* material to defendant El-Saadi notwithstanding his waiver.

---

[1] Fugitive Khawaja's counsel has requested "an opportunity for Mr. Khawaja to review and object to such materials" before those documents are produced, and the filter teams both in D. Mass. and at the Public Integrity Section may have to consult with District Courts in the District of Massachusetts and the District of Columbia, respectively, to resolve any disputed items.  Barring unforeseen circumstances, the government believes a 60-day continuance will provide sufficient time for the prosecution team to copy and provide the non-privileged D. Mass. materials and for the filter teams and Courts to complete review of outstanding privilege issues.

[2] As the government understands it, defendant El-Saadi's proposed waiver would purportedly excuse the government of its obligation to produce additional exculpatory or impeachment information that comes within its possession.

Moreover, severance is inappropriate because the defendants have fallen far short of satisfying the heavy burden of showing that a specific trial right will be compromised.

## I.    A Continuance Is Warranted Given the Uncertainty on Whether the D.C. Circuit Would Enforce the Proposed *Brady* Waiver

The *Brady* doctrine dictates that the government has a constitutional duty to disclose favorable evidence to the accused where such "evidence is material either to guilt or to punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Favorable evidence includes "[i]mpeachment evidence, . . . as well as exculpatory evidence." *United States v. Bagley*, 473 U.S. 667, 676 (1985). Here, defendant El-Saadi wishes to waive his rights under *Brady* and proceed to trial on December 6, 2021. Considering the particular circumstances of this case, the government respectfully submits that a continuance of the trial date is warranted.

Defendant El-Saadi's offer to waive his *Brady* rights places the government in an uncertain situation. While no controlling precedent addresses this question, the D.C. Circuit's decision in *Price v. U.S. Department of Justice*, 865 F.3d 676, 682-83 (D.C. Cir. 2017), suggests that a defendant's waiver of his *Brady* right to exculpatory information may not be enforceable. In holding unenforceable a defendant's guilty plea waiver of his Freedom of Information Act ("FOIA") rights, the D.C. Circuit explained that a plea agreement may not waive a right conferred by a federal statute when the interest in the plea agreement's enforcement is outweighed by a public policy harmed by its enforcement. *Id*. at 683.[3] The D.C. Circuit then highlighted the public

---

[3] Courts have issued conflicting guidance on whether a *Brady* violation can justify allowing a defendant to withdraw a guilty plea. *Compare Alvarez v. City of Brownsville*, 904 F.3d 382, 394 (5th Cir. 2018) (en banc) ("The en banc court . . . abstains from expanding the *Brady* right to the pretrial plea bargaining context."); *United States v. Mathur,* 624 F.3d 498, 507 (1st Cir. 2010) (recognizing that "*Brady* is a trial right"); *Friedman v. Rehal*, 618 F.3d 142, 154 (2d Cir. 2010) (same, in dicta); *United States v. Moussaoui,* 591 F.3d 263, 285-286 (4th Cir. 2010) (same, in dicta), *with Smith v. Baldwin*, 510 F.3d 1127, 1148 (9th Cir. 2007); *McCann v. Mangialardi*, 337 F.3d 782, 787-88 (7th Cir. 2003) ("*Ruiz* strongly suggests that a Brady-type disclosure might be required under the circumstances of this particular case" where defendant entered a plea.); *United*

policy at issue—namely, that FOIA provided individuals convicted of crimes the opportunity to discover potentially exculpatory information or material supporting an ineffective assistance of counsel claim.  *Id*. at 682-83.  The D.C. Circuit further cited *McCann v. Mangialardi*, 337 F.3d 782, 7888 (7th Cir. 2003), where the Seventh Circuit found it "highly likely that the Supreme Court would find a violation of the Due Process Clause if prosecutors or other relevant government actors have knowledge of a criminal defendant's factual innocence but fail to disclose such information to a defendant before he enters into a guilty plea."  Given this discussion in *Price*, the government risks a future D.C. Circuit decision holding it to its *Brady* obligations irrespective of any statements by defendant El-Saadi purporting to waive or forgo those rights.  That uncertainty counsels in favor of granting the requested continuance, allowing the government time to produce the remaining discovery, and obviating the creation of a novel appellate issue.

Should the Court be inclined to proceed under these circumstances, the government requests an opportunity to provide recommendations regarding the colloquy this Court has already stated would be required with defendant El-Saadi and his attorney.  These steps would be necessary to protect individual prosecutors from any future allegation that they violated their discovery obligations and to answer any future claim that defense counsel performed ineffectively in proceeding to trial rather than awaiting the government's processing and review of the D. Mass. and filter materials.  *See* 28 U.S.C. § 2255 (permitting a federal defendant to "move the court

---

*States v. Nelson*, 979 F. Supp. 2d 123, 130, 135-36 (D.D.C. 2013) (finding "the government violated its duty to disclose all exculpatory evidence" prior to defendant's plea).  Regarding impeachment evidence, the Supreme Court held that "the Constitution does not require the Government to disclose material *impeachment* evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz,* 536 U.S. 622, 633 (2002) (emphasis added). The *Ruiz* Court did not decide whether a defendant is entitled to exculpatory evidence at the guilty plea stage.  *Id*.

which imposed [his] sentence to vacate, set aside or correct the sentence" on the grounds that "the sentence was imposed in violation of the Constitution or laws of the United States").

## II.      Severance Is Not Legally Supported

Defendant El-Saadi asks this Court, for the second time, to sever the charges against him, citing generic claims of prejudice that fall far short of what the case law requires.  Defendant Diab identifies no affirmative basis for severance, merely noting that he "will suffer no harm if Mr. El-Saadi's case is severed."  Dkt. 153 at 11.  Because defendant El-Saadi has failed to identify a legally sufficient basis upon which to sever his case from defendant Diab's, and defendant Diab has identified no basis on which to grant severance, the defendants' requests for severance should be denied.

As this Court has already found, there is no legal basis to sever the charges against defendant El-Saadi from the charges pending against his co-defendant.  As the Court previously held, there is a "strong presumption 'in favor of joinder,'" Dkt. 128 at 26 (quoting *United States v. Ford*, 870 F.2d 729, 730 (D.C. Cir. 1989)), and there is no question that defendants El-Saadi and Diab are properly joined here.  Once joinder is properly established, a "district court should grant severance under Rule 14 *only* if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Dkt. 128 at 26 (quoting *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (emphasis added).  Defendant El-Saadi did not meet his "heavy burden" of proving prejudice when he filed his motion for severance over a year ago, *see United States v. Edelin*, 118 F. Supp. 2d 36, 41 (D.D.C. 2000), and he cannot meet that heavy burden now.

Defendant El-Saadi presently contends that he is prejudiced because facing the charges against him has harmed his business prospects by (1) restricting his ability to travel

internationally;[4] (2) causing reputational harm; and (3) curtailing his ability to open new accounts or new lines of credit. *See* Dkt. 153 at 7-8. But these articulated harms fall short of establishing prejudice to a specific trial right, as the case law requires to sever properly joined defendants. *Cf. Zafiro*, 506 U.S. at 539 (elucidating what would be considered a "serious risk" warranting severance, including admission of evidence against one defendant that would be inadmissible as against the co-defendant if tried separately, "markedly different degrees of culpability," or if "essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial"). Moreover, the kinds of harms defendant El-Saadi identified are shared by many defendants facing criminal charges. A ruling that defendant El-Saadi's claimed harms are sufficient to warrant severance would undercut the "strong presumption" in favor of joinder. *See* Dkt. 128 at 26.

As the Court previously noted, that presumption is "especially strong where the respective charges require presentation of much the same evidence, testimony of the same witnesses, and involve . . . defendants who are charged, *inter alia*, with participating in the same illegal acts." *United States v. McGill*, 815 F.3d 846, 924 (D.C. Cir. 2016) (quoting *United States v. Richardson*, 167 F.3d 621, 624 (D.C. Cir. 1999)). Defendant El-Saadi notes that he has a right to a speedy trial, and suggests that because of that right, severance is appropriate. *See* Dkt. 153 at 10. However, as discussed in more detail below, defendant El-Saadi mentioned his speedy trial

---

[4] In the joint status report, defendant El-Saadi suggests that, because "[t]he window to rebuild [defendant El-Saadi's luxury travel business] has finally opened in the past few months," defendant El-Saadi has a greater need to travel internationally than earlier on in the case. The government notes that defendant El-Saadi has not asked the Court to reconsider his pretrial release conditions, a far less remarkable form of relief that would be within the Court's discretion to grant. While the government previously opposed defendant El-Saadi's motion to travel to the United Arab Emirates in part because the United States does not possess an extradition treaty with the United Arab Emirates, *see* Dkt. 110 at 2, defendant El-Saadi has identified countries where he claims a pressing need to travel, including Turkey and the United Kingdom, where an extradition treaty with the United States is in place.

rights for the first time in the November 16, 2021, joint status report submitted to this Court, and has never objected to the prior exclusions of time granted by the Court under the Speedy Trial Act. *See infra* page 12. Moreover, generalized invocation of speedy trial concerns do not warrant severance. *See, e.g.*, *United States v. Worthy*, No. 19-CR-186-RJA, 2021 WL 5316438, at *6 (W.D.N.Y. Nov. 16, 2021) ("Speedy trial concerns do not present a standalone basis for severance of an individual defendant's trial."); *see also United States v. Pena*, 793 F.2d 486, 489-90 (2d Cir. 1986) (noting that an examination of the legislative history of Section 3161(h)(7) of the Speedy Trial Act reveals that the "ends of justice" exception was included to ensure that the Speedy Trial Act "does not alter the present rules on severance of codefendants by forcing the Government to prosecute the first defendant separately or to be subject to a speedy trial dismissal").

Defendant El-Saadi has also suggested to this Court that the presumption in favor of joinder can be ignored because in this case, "there will be two trials no matter what[,]" because "the government will eventually have to try Mr. Khawaja, who remains out of the country." Dkt. 153 at 10. But that argument is entirely speculative and cannot form the basis of a motion to sever. Defendant Khawaja is a fugitive, and the trajectory of his case depends on many factors that remain uncertain, including whether and when Khawaja ultimately is returned to the United States, and whether Khawaja chooses to exercise his trial rights after his return. But more importantly, the timeline of a fugitive defendant whose charges have *already* been severed from the pending case against defendant El-Saadi is irrelevant to the question of whether the law supports severing two properly joined defendants who the government expects to be in a position to try together in a matter of months. Moreover, is it unknown whether Khawaja will be returned to the United States in time to be tried alongside defendant Diab, meaning that three trials, not two, may be necessary if the trials of defendants El-Saadi and Diab are severed. The government respectfully submits

that severance in this case is neither warranted nor legally proper, and the government therefore opposes the defendants' requests.

### III.    Neither a Continuance of Trial Nor a Denial of Severance Would Jeopardize the Defendants' Rights Under the Speedy Trial Act

Given the diligence the government has applied and continues to apply to meet its discovery obligations, and the unique circumstances of this case including the need for two filter teams to review discovery materials and potentially litigate claims of privilege before this Court and the U.S. District Court for the District of Massachusetts, an ends-of-justice continuance is warranted under the Speedy Trial Act (STA).  The STA requires the district court to "exclude" from "the time within which . . . the trial . . . must commence":

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

18 U.S.C.A. § 3161(h)(7)(A).

As the Supreme Court has observed, the STA "recognizes that criminal cases vary widely and that there are valid reasons for greater delay in particular cases." *Zedner v. United States*, 547 U.S. 489, 497 (2006).  "Much of the Act's flexibility is furnished by § 3161(h)([7]), which governs ends-of-justice continuances."  *Id*. at 498.  "Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases."  *Id*. at 508. Congress recognized "that the many sound grounds for granting ends-of-justice continuances could not be rigidly structured."  *Id*.

Although the "substantive balancing underlying the decision" to grant an ends-of-justice continuance is "entrusted to the district court's sound discretion," *United States v. Rice*, 746 F.3d 1074, 1078 (D.C. Cir. 2014), the requirement of express findings imposes "procedural strictness" on the court. *Zedner*, 547 U.S. at 509 (2006). Those findings "must indicate [the court] 'seriously weighed the benefits of granting the continuance against the strong public and private interests served by speedy trials.'" *Rice*, 746 F.3d at 1078 (quoting *United States v. Bryant*, 523 F.3d 349, 361 (D.C. Cir. 2008)).

The need for a reasonable period of time to address discovery obligations is among the well-recognized reasons that justify an ends-of-justice continuance. The courts have repeatedly upheld, against defense challenges, discovery-based continuances. *See, e.g.*, *United States v. Bikundi*, 926 F.3d 761, 777-79 (D.C. Cir. 2019) (upholding ends-of-justice continuances totaling eighteen months in a two-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery").[5]

---

[5]      *See also United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019) (upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 885-86 (11th Cir. 2014) (district court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013) (upholding ends-of-justice continuance of ten months and twenty-four days in case involving violation of federal securities laws, where discovery included "documents detailing the hundreds of financial transactions that formed the basis for the charges" and "hundreds of thousands of documents that needed to be catalogued and separated, so that the parties could identify[] the relevant ones") (internal quotation marks omitted); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010) (upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's

Notably, Section 3161(h)(7)(A) does not require the defendant's consent for an ends-of-justice continuance, and this Court should grant the continuance over a defense objection where, as here, the circumstances clearly warrant it.  District courts routinely grant STA continuances over defense objections in appropriate circumstances.  *See, e.g.*, *United States v. Grant*, No. CR 3:21-MJ-00144-CHL, 2021 WL 1762102, at *3 (W.D. Ky. May 4, 2021) (granting government's motion to extend period to begin trial and exclude time under the STA in light of the ongoing pandemic); *United States v. Kingston*, No. 2-18-CR-00365JNPBCW, 2019 WL 1200254, at *4 (D. Utah Mar. 14, 2019) (denying severance and granting a motion to continue and exclude time under the STA over defendants' objection where discovery was "voluminous" and "the prospect of multiplying the number of jurors who will have to participate in the voir dire process and a lengthy trial also constitutes a significant burden on the citizens of this state.  Thus, the prospect of conducting multiple trials in this matter is a particularly important consideration"), *aff'd sub nom. United States v. Dermen*, 779 F. App'x 497 (10th Cir. 2019); *United States v. Miller*, No. CR 16-40026-TSH, 2017 WL 11318728, at *2 (D. Mass. June 9, 2017) (granting continuance and excluding time under STA over defendant's objection where "additional time is needed by both Defendants to review thousands of discovery documents recently produced by the government"); *United States v. Villarreal*, No. CR 10-50082-JLV, 2011 WL 2182423, at *8 (D.S.D. June 3, 2011) (tolling speedy trial over defendant's objection where government was waiting on the final report from DNA analysis).

---

case was joined with several co-defendants, and there were ongoing investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries); *United States v. O'Connor*, 656 F.3d 630, 634, 640 (7th Cir. 2011) (upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules").

Moreover, the Speedy Trial Act contemplates this very scenario and specifically excludes from computation "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."  18 U.S.C. § 3161(h)(6); *see also United States v. Speight*, 941 F. Supp. 2d 115, 117 (D.D.C. 2013).  Because the defendants' motions for severance should be denied and they are properly joined, El-Saadi's rights under the Speedy Trial Act will not be impaired by the proposed reasonable continuance.  "The question in examining an exclusion under [§ 3161(h)(6)] is whether the delay attributable to the codefendant is 'reasonable.'"  *United States v. Vogl*, 374 F.3d 976, 983–84 (10th Cir. 2004) (citation omitted).  In examining the reasonableness of a period of exclusion, the Tenth Circuit considers the three factors articulated in *Vogl*: "(1) whether the defendant is free on bond, (2) whether the defendant zealously pursued a speedy trial, and (3) whether the circumstances further the purpose behind the exclusion to 'accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial.'"  *Id.* at 984 (citation omitted).  Because El-Saadi is not detained, the first factor weighs in favor of a continuance.  As to the second factor, El-Saadi noted for the first time in the November 16, 2021 joint status report that he "demands a trial consistent with his constitutional and rights to a speedy trial." Dkt. 153 at 9.  Until that date, each time the Court tolled time under the STA, El-Saadi did not object.  *See* Dkt. at Dec. 19, 2019, March 2, 2020, June 15, 2020, Aug. 10, 2020, and Oct. 9, 2020 Minute Entries (tolling Speedy Trial as to El-Saadi and his co-defendants).  The third factor weighs heavily in favor of a continuance.  "[T]here is a strong preference that co-conspirators be jointly tried, particularly when they were indicted together."  *Speight*, 941 F. Supp. 2d at 119 (quoting *United States v. Wilson*, 481 F.3d 475, 482 (7th Cir.2007)); *see also United States v. Zar*, 790 F.3d 1036, 1043 (10th Cir. 2015) (noting that there is a "strong presumption favoring trying

properly joined defendants together"). Indeed, "[w]here the government will recite a single factual history, put on a single array of evidence, and call a single group of witnesses," as is true in this case, "a single trial is preferred." *Vogl*, 374 F.3d at 984 (citation omitted).

To determine whether a defendant's Sixth Amendment right to a speedy trial has been violated, the Court must consider four factors: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo,* 407 U.S. 514, 530 (1972). Under the first factor, which "is to some extent a triggering mechanism," *id.*, a defendant must make a threshold showing that the delay between the accusation and the trial was presumptively prejudicial, as "by definition, [a defendant] cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." *Doggett v. United States*, 505 U.S. 647, 652 (1992). Without such a showing of presumptive prejudice, there is "no necessity for inquiry into the other factors." *Barker*, 407 U.S. at 530.

The defendant cannot show, and this Court should not find, that the government is not "prosecut[ing] his case with customary promptness," *see Doggett*, 505 U.S. at 652, given the government's diligent efforts to address discovery issues as they arise, and the existence of an ongoing filter review.[6] Even in cases involving long periods of pre-trial detention, which is entirely absent here, the D.C. Circuit has found no violation of the Sixth Amendment speedy trial guarantee. *See, e.g.*, *Rice*, 746 F.3d at 1082 ("[A]lthough Rice suffered lengthy [twenty-six month] 'pretrial incarceration' and 'anxiety and concern,' he does not even attempt to argue that he suffered 'the most serious' form of prejudice: the impairment of his defense. (quoting *Barker*, 407 U.S. at 532); *United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 203 (D.C. Cir. 2013) (three-

---

[6] Even assuming that the defendant had made a showing of prejudice, the presumption is rebuttable, and the threshold requirement—the length of the delay—is only "one factor among several." *Doggett*, 505 U.S. at 652.

and-one-half years of pretrial detention did not violate the Sixth Amendment).  In *United States v. Taylor*, No. 18-198 (JEB), 2020 WL 7264070 (D.D.C. Dec. 10, 2020), Judge Boasberg recently denied a defendant's motion to dismiss for a speedy trial violation, finding that his Sixth Amendment right had not been infringed notwithstanding the fact that the defendant had at that point been detained pending trial for 28 months.  Here, defendant El-Saadi is not detained and has alleged no impairment to his defense by the delay.  In fact, should there be any *Brady* or impeachment materials in the D. Mass. discovery, it will aid in his defense.

In light of the diligence the government has applied and continues to apply to meet its discovery obligations, and the unique circumstances of this case, including the existence of two filter teams and a potential need to litigate privilege claims in two judicial districts, an ends-of-justice continuance is warranted under the Speedy Trial Act, and a 60-day continuance is appropriate.

**CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny defendants' request for severance, grant the government's motion to vacate the trial date currently set for December 6, 2021, and grant a 60-day continuance of the above-captioned proceeding.

Respectfully submitted,

COREY R. AMUNDSON
Chief, Public Integrity Section
Criminal Division
U.S. Department of Justice

By:     */s/ Jolee Porter*
Victor R. Salgado (D.C. Bar No. 975013)
Michelle K. Parikh (D.C. Bar No. 1044532)
Jolee Porter (N.Y. Bar No. 4909362)
Public Integrity Section
Criminal Division
U.S. Department of Justice

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.


Dated:  November 24, 2021     */s/ Jolee Porter*
             Jolee Porter
             Public Integrity Section
             Criminal Division
             U.S. Department of Justice