**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RANI EL-SAADI and MOHAMMAD DIAB,<br><br>*Defendants*. | Criminal Action No. 19-374 (RDM) |

### ORDER REGARDING TRIAL PROCEDURES

The parties are instructed to comply with the directives set forth below in the upcoming trial in this matter:

1. **Trial Schedule**. The trial will begin with jury selection on **Wednesday, February 23, 2022, at 9:00 a.m. in Courtroom 20, the Ceremonial Courtroom.** Upon completion of jury selection, the trial will begin on **Thursday, February 24, 2022, at 9:30 a.m. in Courtroom 8.** Unless the parties are otherwise notified, the Court will convene the trial from **9:30 a.m. to 12:30 p.m.** and **1:30 p.m. to 5:00 p.m.**, Monday through Friday, with a brief mid-morning and mid-afternoon recess. Counsel should be prepared to deliver their opening statements promptly after the jury has been sworn-in and preliminary instructions have been delivered by the Court.
   a. Opening statements shall not exceed 60 minutes per party. Any exhibits, charts, or summaries to be used in opening statements must be cleared with counsel for the other side prior to the opening statements, and if any party objects, such objections must be submitted to the Court for resolution by **2 p.m. on February 23, 2022.**
   b. Immediately after opening statements, the government must be prepared to call its first witness.
   c. Unless otherwise instructed by the Court, counsel should be present in the courtroom each morning at least thirty minutes before trial begins to address any preliminary matters. Trial before the jury will convene promptly at the designated time on each trial day to avoid keeping the jury waiting. Counsel must be in the courtroom at least 5 minutes before Court is scheduled to begin or resume after a recess.

2. **General Courtroom Rules**. In addition to exercising civility, counsel shall, unless leave is otherwise granted:
   a. examine witnesses from the lectern and refer to all individual parties and witnesses, over the age of 18, as "Mr." or "Ms." rather than by a first name or nickname;
   b. request permission before approaching a testifying witness;
   c. stand when raising objections;
   d. stand when the jury is entering or leaving the courtroom;
   e. direct all statements for the record to the Court rather than to the opposing party.

3. **Jury Selection Process**. The Court has previously described the jury selection process for the benefit of counsel.

4. **Technical Equipment**. Counsel needing technical assistance with courtroom equipment (*e.g.,* overhead projectors, video display monitors) must contact the Courtroom Technology Administrator of the Clerk's office at (202) 354-3019.

5. ***Voir Dire* Questions**. The *voir dire* questions that the Court intends to pose to the venire panel collectively are listed in **Attachment A** to this order. Any objection not raised by February 22, 2022, shall be waived.

6. **Motions or Objections During Trial**.
    a. **No evidentiary objections shall be argued in the presence of the jury.** Counsel must state clearly and succinctly the legal basis for any objection in a word or short phrase. A party may explain or amplify its objections on the record after the jury has been excused or using the audio equipment at counsels' table. If counsel plans to engage in a line of inquiry that requires judicial pre-approval, counsel may seek a "bench conference," using the audio equipment at counsels' table.

    b. **Bench conferences shall take place using the audio equipment at counsels' table.** Counsel should consider whether the issue counsel wishes to address at "the bench" can wait until the jury is excused for a recess.

7. **Witness Examination**.
    a. A party calling a witness must arrange for the witness's presence until cross-examination is completed. Failure to have a witness present for cross-examination is grounds for striking the witness's testimony. Except in extraordinary circumstances, the Court will not recess simply because a witness is unavailable.

    b. After a non-defendant witness has been tendered for cross-examination and until the witness has been tendered back for redirect, counsel calling that witness (including law enforcement officers or investigators) to testify must have no further discussions with that witness concerning any aspect of the testimony already given or anticipated. For a defendant-witness, the Court refers the parties to the guidelines set forth in *United States v. McLaughlin*, 164 F.3d 1, 4–7 (D.C. Cir. 1998), *cert. denied*, 526 U.S. 1079 (1999).

    c. With the exception of the defendant, all potential witnesses shall be excluded from the courtroom prior to their testimony unless otherwise authorized by the Court.

8. **Jury Instructions**. If events during trial necessitate an immediate jury instruction, counsel requesting the instruction must provide the Court with the text of the proposed instruction; otherwise, the Court will consider the request waived. If a party would like the instruction included in the Court's final instructions to the jury, that party bears the responsibility of makingsuch a request to the Court before the charging conference.

9. **Juror Confidentiality**. The names and personal information of prospective and sitting jurors in any trial of this matter shall be kept confidential and not disclosed outside of open court, except

upon order of the Court. *See* D.D.C. JURY SELECTION PLAN, § K.1, available at https://www.dcd.uscourts.gov/sites/dcd/files/JurySelectionPlanReviewed2015.pdf.  Counsel andparties are cautioned that violation of this directive may result in contempt proceedings.

10. **COVID-19 Protocols**. To ensure the health and safety of all trial participants, courthouse staff and visitors during the COVID-19 pandemic, special procedures will be employed during the course of the trial, including conducting jury selection in the Ceremonial Courtroom, Courtroom 20, *see supra* ¶ 1. As will be discussed during the pretrial conference on February 22, 2022, all persons in the courtroom are required to maintain social distancing and to wear a mask, except when speaking. The Court will make clear masks available upon request to trial participants, and to any witness who prefers to wear a mask while testifying. If either party objects to allowing a witness to testify while masked (with either a clear or opaque mask), counsel shall timely raise that objection with the Court. Objections that are not timely raised will be deemed waived.

**Date:** February 19, 2022

    /s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

**ATTACHMENT A TO TRIAL ORDER**
*Voir Dire* **Questions**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  v.<br><br>RANI EL-SAADI and MOHAMMAD DIAB,<br><br>  *Defendants.* | Criminal No. 19-374 (RDM) |

**VOIR DIRE**

Good morning/afternoon ladies and gentlemen, and welcome to the United States District Court.  I am Judge Moss, and I will be the presiding judge in this case.  You have been called to this courtroom for possible selection in a criminal case entitled *United States v. Rani El-Saadi and Mohammad Diab*.

Would you all please stand so that the Deputy Clerk can swear you in, and then we will proceed.

The purpose of jury selection, which you will hear referred to as *voir dire*, is to select jurors who have no prior knowledge of the case and no bias toward either side in the case.  In short, it is our aim to select a jury of twelve, with four alternates, that will reach a verdict based solely on the evidence presented in this courtroom and the law as I instruct you.  During this process, you will be introduced to the participants in the trial, and I will ask you a series of questions that the lawyers and I think will be helpful to us in selecting a fair and impartial jury.  You, of course, are bound by the oath you've just taken to truthfully answer those questions.

This is a criminal case entitled *United States v. Rani El-Saadi and Mohammad Diab* in which the Defendants, Rani El-Saadi and Mohammad Diab, are charged in an indictment with

criminal offenses involving allegations of illegal campaign contributions. Mr. El-Saadi is charged in two counts in the indictment and Mr. Diab is charged in four counts in the indictment.

First, Mr. El-Saadi and Mr. Diab are charged with conspiracy. Specifically, Mr. El-Saadi and Mr. Diab have been charged with a conspiracy (i) to make campaign contributions in the name of another person and permitting one's name to be used to effect such contributions; (ii) to cause a political committee knowingly to accept contributions in excess of federal limits; (iii) to cause campaign committees unwittingly to make false statements about those contributions to the Federal Election Commission, the agency that administers and enforces federal campaign finance laws; and (iv) to cause false entries in records with the intent to impede, obstruct, and influence the proper administration of matters within the Federal Election Commission.

In addition, Mr. El-Saadi and Mr. Diab are charged with willfully permitting another person to use their names to make campaign contributions so that the other person could evade campaign contribution limits. Mr. El-Saadi and Mr. Diab have both been charged with causing a contribution to be made to the Hillary Victory Fund, a joint fundraising committee for Hillary for America, which was Hillary Clinton's presidential campaign organization, in 2016. The Hillary Victory Fund allegedly shared a portion of the contributions it received with the Democratic National Committee as well as other political committees. Mr. Diab has also been charged with willfully permitting another person to use his name to make a contribution to the Republican National Committee in 2017 so that the other person could evade campaign contribution limits.

Finally, Mr. Diab is charged with obstructing the due administration of justice, that is, a pending federal grand jury proceeding.

Mr. El-Saadi and Mr. Diab have both pleaded not guilty to these charges and maintain their innocence.

You all should now have an index card and a pen or pencil. If you have not already done so, please write your juror number in the upper right-hand corner of your index card. I am now going to ask you a series of questions. They are all yes/no questions. If you have a "yes" answer to a particular question, please write the number of the question on your card. Don't write "yes" or why you have a "yes" answer; just write the number.

After I finish asking you all the questions, I, along with the lawyers and my staff, will leave and head across the hall. The Deputy Clerk will then escort each of you there, one by one, where you will meet with me and the lawyers. At that point, I will ask that you give your card to the Deputy Clerk and come sit in the jury box in that Courtroom. I will then ask you about your answers, and I will provide the lawyers with the opportunity briefly to follow up on our discussion.

Here are my questions:

**Eligibility**

1. Do you no longer live in the District of Columbia?

**People Involved in the Proceedings**

2. Do you know or have you heard anything about this case?

3. The United States is represented by attorneys Victor Salgado, Michelle Parikh, and Tanya Senanayake, who will be assisted by Brandon Merriman, an FBI Special Agent, and Connor Mulvey, a paralegal. Do you know these individuals either personally or professionally?

4. The Defendants are represented by attorneys Harland Braun, Justin Shur, Megan Church, and Ken Notter. Do you know these individuals either personally or professionally?

5. The Defendants in this case are Rani El-Saadi and Mohammad Diab. Do you, a family member, or a close friend know of Mr. El-Saadi or Mr. Diab?

6. If I could ask that you all take a minute to look at the other potential jurors: do

you recognize or think you know any of the other potential jurors in the panel?

7. During the presentation of evidence, you may hear testimony from or about the following persons or entities: Rachael Bingham, Roy Boulos, Charles Burke, Dennis Cheng, Rudy Dekermenjian, Wael El-Saadi, Michael Evans, Iancu "John" Gusita, Diane Hamwi, Michael Hartsock, Stevan Hill, Chad Rivard, Telly Kanakis, Brandon Merriman, Samir Rizk, Sarah Robinson, Stephanie Smith, Thayne Whipple, Ahmad "Andy" Khawaja, George Nader, Allied Wallet, Inc., GS Investment, Limited, LAX Express Travel, LLC, E-Payment Solutions, Goodlife Solutions, Anastasia Stoliarova, Charlotte Hill, Sheryl Whipple, Betty Boulos, John Thorpe, Jean Marc Eljwaidi, Ryan Mazen Alali, Joe Kiani, Huma Abedin, John Podesta, Robby Mook, Marc Elias, Priorities USA Action, Taryn Vogel, Nate Shutman, Ronna McDaniel, Elliott Broidy, and Charlie Kirk.

Do you know of any of these individuals or entities?

8. The Courtroom Deputy is Kristin Thompson, the court reporter is Jeff Hook, and my law clerks are Amanda Chuzi, Zach Glubiak, and Peter Kallis. Do you know me or any member of my staff?

**Presumption of Innocence**

9. The government has the burden of proving Mr. El-Saadi and Mr. Diab guilty beyond a reasonable doubt, and each is presumed innocent unless and until the government meets that burden. This burden of proof never shifts to Mr. El-Saadi or Mr. Diab, and they have no obligation to offer their own evidence. Would you have any difficulty or hesitation with respecting this allocation of the burden of proof?

10. There has been an indictment in this case. An indictment is not evidence of a crime or that the defendant did something wrong. It merely initiates a case and is a formal way of presenting the charges. The indictment here informs Mr. El-Saadi, Mr. Diab, the Court, and the members of the jury of the charges against them. Would the fact that an indictment charges Mr. El-Saadi and Mr. Diab lead you to believe that either defendant is guilty, or that they did

4

something wrong?  Would the fact that an indictment charges Mr. El-Saadi and Mr. Diab make it difficult for you to apply the presumption of innocence?

11. A defendant has a constitutional right not to testify, and, if Mr. El-Saadi or Mr. Diab decides not to testify, I will instruct you that you may not hold his silence against him in any way.  Would you have any difficulty following that instruction?

12. Do you currently have an opinion regarding Mr. El-Saadi or Mr. Diab's guilt or innocence in this case?

### Case-Specific Questions

13. Mr. El-Saadi and Mr. Diab, as I mentioned earlier, are charged with a conspiracy (i) to make campaign contributions in the name of another person; (ii) to cause a political committee knowingly to accept contributions in excess of federal limits; (iii) to cause political fundraising committees unwittingly to make false statements about those contributions to the Federal Election Commission; and (iv) to cause false entries in records with the intent to impede, obstruct, and influence the proper administration of matters within the Federal Election Commission.  Mr. El-Saadi and Mr. Diab are also charged with permitting another person to use their names to make a campaign contribution so that the other person could evade campaign contribution limits.  And, Mr. Diab is charged with obstructing the due administration of justice, that is, a pending federal grand jury proceeding.  Is there anything about the nature of these charges that would make it difficult for you to render a fair and impartial verdict if you are chosen as a juror?

14. Do you have any strong opinions about our campaign finance laws or our political system that would make it difficult to be fair and impartial in this case?

15. During the course of this trial, I expect you will hear evidence involving hundreds of thousands of dollars of donations to political campaigns.  Is there anything about that evidence that might affect your service, give you pause about serving, or make you reluctant to serve as a juror in this case?

5

16. As noted earlier, this case will involve evidence of contributions made to a candidate for President of the United States in the 2016 election and a national political party committee in 2017. Would the fact that this case involves contributions made to a candidate in the 2016 presidential election and a national political party committee in 2017 affect your ability to be fair and impartial in this trial?

17. Did you, a family member, or a close friend work for a campaign in the 2016 presidential election or for a political committee affiliated with either a campaign or national political party?

18. Do you, a family member, or a close friend have any education, training or work or volunteer experience in fundraising, political campaigns, or election law? Have you ever hosted a political fundraiser? Do you have any experience or familiarity with "bundling" campaign contributions?

19. Do you, a family member, or a close friend have any experience with the Federal Election Commission, which is also known as the FEC?

20. Do you hold any strong views on the Islamic faith or Muslims?

21. Do you have any strong views on the United Arab Emirates or any other country in the Middle East or North Africa?

22. Do you have any strong views about efforts by foreign individuals attempting to make contributions to U.S. election campaigns?

23. Some of the people you may hear about in this case may have pleaded guilty to crimes similar to those that Mr. El-Saadi and Mr. Diab are alleged to have committed. Would the fact that Mr. El-Saadi and Mr. Diab may have known or associated with individuals who have pleaded guilty to those crimes affect your ability to be fair and impartial in his case?

**Experience with the Justice System**

24. Have you served previously on a grand jury or a trial jury in a criminal or civil case in any court?

25. Have you ever been a witness in any court case? Have you ever been a party to a court case?

26. Have you, a family member, or a close friend been the victim of a crime?

27. Have you, a family member, or a close friend ever had any legal training or ever worked at a law office?

28. Have you, a family member, or a close friend ever been detained by the police, arrested, or charged with a crime? Have you, a family member, or a close friend ever been investigated by a federal, state, or local law enforcement agency?

29. Have you served in the military?

30. Do you have any strong opinions about criminal defendants, defense attorneys, or prosecutors that would make it difficult for you to render a fair and impartial verdict if you are chosen as a juror?

31. There may be testimony from law enforcement officers in this case. Would you tend to believe or disbelieve their testimony—or find them more or less credible than other witnesses—because they are law enforcement officers?

32. You may hear the testimony in this case from individuals cooperating with the government pursuant to a plea agreement. Do you have any strong feelings, one way or the other, in connection with the use of witnesses who are cooperating in exchange for a possible reduction of their sentence that might prevent you from rendering a fair and impartial verdict in this case?

33. Have you, a family member, or a close friend ever worked for any of the following organizations: First, the Federal Election Commission or a similar state election commission? Second, any type of federal, state, or local law enforcement agency? Third, a local, state, or federal prosecutor's office, such as the Office of the Attorney General for the District of Columbia, the United States Attorney's Office, the Department of Justice, or a state's attorney or commonwealth attorney? Fourth, any public defender or a private criminal defense

office? Fifth, any jail, prison, or other type of penal institution?

34. Do you, a family member, or a close friend belong to any group that advocates for a change in our campaign finance or election laws or for changes in our criminal justice system? Do you, a family member, or a close friend belong to a group associated with crime prevention or control such as Neighborhood Watch Groups or Orange Hats?

**Hardship and Catch-All**

35. Do you have any health problems that would interfere with your ability to sit as a juror in this case? Do you take medication that makes you drowsy or makes it difficult to remain alert during these proceedings? Do you have any problems with your hearing or eyesight?

36. Are you, or is anyone with whom you live, or with whom you need to have frequent contact at heightened risk of severe illness from COVID-19?

37. Do you have any difficulty reading, speaking, or understanding English?

38. We expect the presentation of evidence in this trial to conclude by March 11, 2022. After the close of the evidence, the jury will deliberate until it has reached a decision. Would serving as a juror in this case be an extreme hardship to you?

39. My final question is what I call my "catch-all question." This asks whether there is any other reason that I haven't asked about that might make it difficult for you to sit fairly, impartially, and attentively as a juror. Perhaps you have a religious, moral, or philosophical reason that you believe would make it hard for you to be fair. In sum, is there some other reason that would make it difficult for you to sit as a fair and impartial juror in this case?

Now, as explained, counsel and I are going to head to a different courtroom, where we will explore these questions and answers with each of you. The Deputy Clerk will bring you to the courtroom one by one with your card. We will go over the information that you have listed and have a discussion with you about it. Feel free to take your mask off or leave it on when we

8

are talking. We will be starting on the right in the front row and just make our way through however many of you we need to talk to.

If you need to use the facilities, you can go outside, and courthouse personnel can direct you to them. But please come back promptly. Do not wait around out in the hall. Certainly, do not leave this floor of the courthouse. Sometimes people stand outside the courtroom and start talking among themselves and it means that the Deputy Courtroom Clerk has to go out and find you. And that takes time. So please come back into the courtroom promptly.

I ask that you not speculate about the case. If you have information that you are going to be providing me, please do not discuss it with your fellow jurors so that you do not create problems for them by telling them something that may require that I excuse you and then may wind up requiring that I excuse them as well.

You may not conduct any independent investigation of the law or the facts in the case. This means that you cannot conduct any kind of research about this case—for example, researching any issue on the internet using your phone or another device, asking any questions of anyone via email or text, or otherwise communicating about or investigating the facts or law connected to the case.

You can talk among yourselves. There is no problem with that, so long as you wear your masks and maintain social distancing. I just ask that you not discuss the case.

If you do get up, please look at whomever is on either side of you and where you are— we put you in order according to the list so we know who you are—and I ask that you go back to the same seat when you return. That way, we do not take you out of order.

If you run into anyone associated with this case, please do not talk to them about anything. If you are seen talking to them, I will need to add that to my list of questions to make sure you are not talking about the case. You are not allowed to talk about the case. Again, if you are seen talking to counsel or others, even if you are not talking about the case, I still need to make an inquiry, and that takes a lot of extra time. Finally, if you see any of the attorneys or

9

witnesses involved in the case and they turn and walk away from you, they are not being rude; they are merely following the same instruction that I gave to them. We want you to come here without getting additional information from somebody else. If you are chosen as a juror, you will be required to make your decision based solely on the evidence that is going to be presented to you in the courtroom.

    We will do this as quickly as we possibly can. I appreciate your patience.