**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA, |
| v. |
| RANI EL-SAADI and MOHAMMAD DIAB, |
| *Defendants.* |

Criminal No. 19-374 (RDM)

**[DRAFT] FINAL JURY INSTRUCTIONS**

## PRELIMINARY REMARKS

The time has now come when all of the evidence is in and you have heard the closing arguments of the lawyers.  We're about to enter your final duty in this case, which is to decide the issues of fact and to return a verdict.  It is up to me to instruct you on the law, and I ask you to listen carefully, just as you have throughout this trial.  Before we talk about the specific charges alleged here and some of the specific issues in the case, however, I want to take a few minutes to talk about some general rules of law.  Some of this may repeat what I told you in my preliminary instructions.

## FURNISHING THE JURY WITH A COPY OF THE INSTRUCTIONS

To start, I will provide you with a copy of my instructions.  During your deliberations, you may, if you want, refer to these instructions.  While you may refer to any particular portion of the instructions, you are to consider the instructions as a whole, and you may not follow some and ignore others.  If you have any questions about the instructions, you should feel free to send me a note.  Please return your instructions to me when your verdict is rendered.

## FUNCTION OF THE COURT

My function is to conduct this trial in an orderly, fair, and efficient manner; to rule on questions of law; and to instruct you on the law that applies in this case.

It is your duty to accept the law as I instruct you. You should consider all the instructions I provide you as a whole. You may not ignore or refuse to follow any of them.

## FUNCTION OF THE JURY

Your function, as the jury, is to determine what the facts are in this case.  You are the sole judges of the facts.  While it was my responsibility to decide what is admitted as evidence during the trial, you alone decide what weight, if any, to give to that evidence.  You alone decide the credibility or believability of the witnesses.

You should determine the facts without prejudice, fear, sympathy, or favoritism.  You should not be improperly influenced by anyone's race, ethnicity, nationality, gender, or any such trait.  You must decide the case solely from a fair consideration of the evidence.

You shall not take anything that I may have said or done during trial as indicating how I think you should decide this case.  If you believe that I have expressed or indicated any such opinion, you should ignore it.  The verdict in this case is your sole and exclusive responsibility.

## JURY'S RECOLLECTION CONTROLS

If any reference by me or by the attorneys to the evidence is different from your own

memory of the evidence, it is your memory that should control during your deliberations.

**NOTETAKING BY JURORS**

During the trial, I have permitted all jurors who wanted to do so to take notes.  You may take your notebooks with you to the jury room and use them during your deliberations if you wish.  As I told you at the beginning of the trial, your notes are only to be an aid to your memory.  They are not evidence in the case, and they should not replace your own memory of the evidence.  Those jurors who have not taken notes should rely on their own memory of the evidence.  The notes are intended to be for the notetaker's own personal use.

## EVIDENCE IN THE CASE

During your deliberations, you may consider only the evidence properly admitted in this trial.  The evidence in this case consists of the sworn testimony of the witnesses, the exhibits that were admitted into evidence, and the facts stipulated to by the parties.

During the trial, you were told that the parties had stipulated—that is, agreed—to certain facts.  You should consider any stipulation of fact to be undisputed evidence.

When you consider the evidence, you are permitted to draw, from the facts that you find have been proven, such reasonable inferences as you feel are justified in light of your experience. You should give any evidence such weight as in your judgment it is fairly entitled to receive.

## STATEMENTS OF COUNSEL

The statements and arguments of the lawyers are not evidence.  They are only intended to assist you in understanding the evidence.  Similarly, the questions of the lawyers are not evidence.

## BURDEN OF PROOF—PRESUMPTION OF INNOCENCE

Every defendant in a criminal case is presumed to be innocent.  This presumption of innocence remains with the defendant throughout the trial unless and until the government has proven that he is guilty beyond a reasonable doubt.  This burden never shifts throughout the trial. The law does not require Mr. El-Saadi or Mr. Diab to prove his innocence or to produce any evidence at all.  If you find that the government has proven beyond a reasonable doubt every element of an offense with which a Defendant is charged, it is your duty to find him guilty of that offense.  On the other hand, if you find the government has failed to prove any element of an offense beyond a reasonable doubt, you must find the Defendant not guilty of that offense.

**REASONABLE DOUBT**

The government has the burden of proving Mr. El-Saadi and Mr. Diab guilty beyond a reasonable doubt.  In civil cases, it is only necessary to prove that a fact is more likely true than not, or, in some cases, that its truth is highly probable.  In criminal cases such as this one, the government's proof must be more powerful than that.  It must be beyond a reasonable doubt. Reasonable doubt, as the name implies, is a doubt based on reason—a doubt for which you have a reason based upon the evidence or lack of evidence in the case.  If, after careful, honest, and impartial consideration of all the evidence, you cannot say that you are firmly convinced of the defendant's guilt, then you have a reasonable doubt.

Reasonable doubt is the kind of doubt that would cause a reasonable person, after careful and thoughtful reflection, to hesitate to act in the graver or more important matters in life. However, it is not an imaginary doubt, nor a doubt based on speculation or guesswork; it is a doubt based on reason.  The government is not required to prove guilt beyond all doubt or to a mathematical or scientific certainty.  Its burden is to prove guilt beyond a reasonable doubt.

## RIGHT OF DEFENDANT NOT TO TESTIFY

Every defendant in a criminal case has an absolute right not to testify.  Mr. El-Saadi, with the advice of his counsel, has chosen to exercise this right.  You must not hold his decision against him, and it would be improper for you to speculate as to the reason or reasons for his decision or even to discuss his decision during your deliberations.  You must not assume that Mr. El-Saadi is guilty because he chose not to testify and must not draw any inference at all from his decision.

**DEFENDANT AS WITNESS**

A defendant has a right to become a witness in his own behalf.  Mr. Diab's testimony should not be disbelieved merely because he is the defendant.  In evaluating his testimony, however, you may consider the fact that Mr. Diab has an interest in the outcome of this trial.  As with the testimony of any other witness, you should give Mr. Diab's testimony as much weight as in your judgment it deserves.

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

There are two types of evidence from which you may determine what the facts are in this case: direct evidence and circumstantial evidence. When a witness, such as an eyewitness, asserts actual knowledge of a fact, that witness's testimony is direct evidence. On the other hand, evidence of facts and circumstances from which reasonable inferences may be drawn is circumstantial evidence.

Let me give you an example. Assume a person looked out a window and saw that snow was falling. If he later testified in court about what he had seen, his testimony would be direct evidence that snow was falling at the time he saw it happen. Assume, however, that he looked out a window and saw no snow on the ground, and then went to sleep and saw snow on the ground after he woke up. His testimony about what he had seen would be circumstantial evidence that it had snowed while he was asleep.

The law says that both direct and circumstantial evidence are acceptable as a means of proving a fact. The law does not favor one form of evidence over another. It is for you to decide how much weight to give to any particular evidence, whether it is direct or circumstantial. You are permitted to give equal weight to both. Circumstantial evidence does not require a greater degree of certainty than direct evidence. In reaching a verdict in this case, you should consider all of the evidence presented, both direct and circumstantial.

## NATURE OF CHARGE NOT TO BE CONSIDERED

One of the questions that you were asked when we were selecting this jury was whether the nature of the charges would affect your ability to reach a fair and impartial verdict.  We asked you that question because you must not allow the nature of a charge, or of the charges together, to affect your verdict.  You must consider only the evidence that has been presented in this case in reaching a fair and impartial verdict.

## INADMISSIBLE AND STRICKEN EVIDENCE

The lawyers in this case sometimes objected when the other side asked a question, made an argument, or offered evidence that the objecting lawyer believed was not proper.  You must not hold such objections against the lawyer who made them or the party she or he represents.  It is the lawyers' responsibility to object to evidence that they believe is not admissible.

If, during the course of the trial, I sustained an objection to a lawyer's question, you should ignore the question, and you must not speculate as to what the answer would have been. If, after a witness answered a question, I ruled that the answer should be stricken, you should ignore both the question and the answer, and they should play no part in your deliberations. Likewise, exhibits as to which I have sustained an objection or that I ordered stricken are not evidence, and you must not consider them in your deliberations.

## CREDIBILITY OF WITNESSES

In determining whether the government has proven the charges against either defendant beyond a reasonable doubt, you must consider the testimony of all the witnesses who have testified.

You are the sole judges of the credibility of the witnesses.  You alone determine whether to believe any witness and the extent to which a witness should be believed.  Judging a witness's credibility means evaluating whether the witness has testified truthfully and also whether the witness accurately observed, recalled, and described the matters about which the witness testified.

You may consider anything that in your judgment affects the credibility of any witness. For example, you may consider the demeanor and the behavior of the witness on the witness stand; the witness's manner of testifying; whether the witness impresses you as a truthful person; whether the witness impresses you as having an accurate memory and recollection; whether the witness has any motive for not telling the truth; whether the witness had a full opportunity to observe the matters about which he or she has testified; and whether the witness has any interest in the outcome of this case or friendship or hostility toward other people concerned with this case.

In evaluating the accuracy of a witness's memory, you may consider the circumstances surrounding the event, including any circumstances that would impair or improve the witness's ability to remember the event, the time that elapsed between the event and any later recollections of the event, and the circumstances under which the witness was asked to recall details of the event.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony

17

of different witnesses, may or may not cause you to discredit such testimony.  Two or more persons witnessing an incident or transaction may see or hear it differently; an innocent mis-recollection, like a failure of recollection, is not an uncommon experience.  In weighing the effect of the inconsistency or discrepancy, always consider whether it pertains to a matter of important or unimportant detail and whether the inconsistency or discrepancy results from innocent error or intentional falsehood.

You may consider the reasonableness or unreasonableness, the probability or improbability, of the testimony of a witness in determining whether to accept it as true and accurate.  You may consider whether the witness has been contradicted or supported by other evidence that you credit.

If you believe that any witness has shown him or herself to be biased or prejudiced, for or against either side in this trial, you may consider and determine whether such bias or prejudice has colored the testimony of the witness so as to affect the desire and capability of that witness to tell the truth.

You should give the testimony of each witness such weight as in your judgment it is fairly entitled to receive.

## COOPERATING WITNESSES

You have heard evidence that Roy Boulos, Rudy Dekermenjian, Stevan Hill, and Thayne Whipple entered into plea agreements with the government pursuant to which they each agreed to testify truthfully in this case and the government agreed to dismiss charges against each of them, and to bring each of their cooperation to the attention of the judge at the time of sentencing.

The government is permitted to enter into this kind of plea agreement. You, in turn, may accept the testimony of such witnesses and convict a Defendant on the basis of this testimony alone, if it convinces you of a Defendant's guilt beyond a reasonable doubt. A witness who has entered into a plea agreement is under the same obligation to tell the truth as is any other witness; the plea agreement does not protect him against a prosecution for perjury or false statement, should he lie under oath.

However, you may consider whether a witness who has entered into such an agreement has an interest different from other types of witnesses. You may consider whether the plea agreement a witness entered into with the government has motivated him to testify falsely against a Defendant. The testimony of a witness who has entered into a plea agreement should be considered with caution. You should give the testimony as much weight as in your judgment it deserves.

## LAW ENFORCEMENT OFFICER'S TESTIMONY

Testimony from a law enforcement officer should be evaluated by you just as any other evidence in the case.  In evaluating the officer's credibility, you should use the same guidelines that you apply to the testimony of any witness.  In no event should you give either greater or lesser weight to the testimony of any witness merely because she or he is or was a law enforcement officer.

## NUMBER OF WITNESSES

The weight of the evidence is not necessarily determined by the number of witnesses testifying for each side.  Rather, you should consider all the facts and circumstances in evidence to determine which of the witnesses you believe.  You might find that the testimony of a smaller number of witnesses on one side is more believable than the testimony of a greater number of witnesses on the other side or you might find the opposite.

## RECORDING & TRANSCRIPT

A recording of a conversation identified by a witness has been received in evidence. A transcript of this recorded conversation was displayed for your convenience and guidance as you listened to the recording. The recording, however, is the evidence in the case; the transcript is not. If you noticed any difference between the transcript and the recording, you must rely only on the recording and not the transcript. In addition, if you cannot determine from the recording that particular words were spoken, you must disregard the transcript as far as those words are concerned.

**KNOWINGLY**

The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally and not because of ignorance, mistake, or accident.

**WILLFULLY**

A person acts willfully if he acts intentionally and purposely and with the intent to do something the law forbids, that is, with the bad purpose to disobey or to disregard the law. The person need not be aware of the specific law or rule that his conduct may be violating. But he must act with intent to do something that the law forbids.

**INFERRING INTENT**

Someone's intent ordinarily cannot be proved directly because there is no way of knowing what a person is actually thinking, but you may infer someone's intent from the surrounding circumstances. You may consider any statement made or acts done by the Defendant and all other facts and circumstances received in evidence which indicate his intent.

You may infer, but are not required to infer, that a person intends the natural and probable consequences of acts he intentionally did or did not do. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial. You should consider all the circumstances in evidence that you think are relevant in determining whether the government has proved beyond a reasonable doubt that the Defendant acted with the necessary state of mind.

**INDICTMENT NOT EVIDENCE**

The indictment is merely the formal way of accusing a person of a crime.  You must not consider the indictment as evidence of any kind—you may not consider it as any evidence of Mr. El-Saadi or Mr. Diab's guilt or draw any inference of guilt from it.

## ALLEGED OFFENSES

The indictment charges Mr. El-Saadi and Mr. Diab with violations of federal campaign finance laws, and Mr. Diab is also charged with obstruction of justice.  Mr. El-Saadi is charged in two counts, and Mr. Diab is charged in four counts.

Specifically, Mr. El-Saadi and Mr. Diab have been charged with conspiring to commit offenses against the United States, including knowingly and willfully making campaign contributions in the name of another person and permitting one's name to be used to effect such contributions; knowingly and willfully causing the submission of false, fictitious, and fraudulent statements and representations to the Federal Election Commission, the agency that administers and enforces federal campaign finance laws; and knowingly causing false entries in records with the intent to impede, obstruct, and influence the proper administration of matters within the Federal Election Commission.

In addition, Mr. El-Saadi and Mr. Diab are each charged with knowingly and willfully permitting his name to be used to effect a campaign contribution of another person.  Mr. El-Saadi and Mr. Diab have both been charged with knowingly and willfully permitting their names to be used to effect a campaign contribution to the Hillary Victory Fund, a joint fundraising committee, in 2016.  The Hillary Victory Fund allegedly shared a portion of the contributions it received with the Democratic National Committee as well as other political committees, including Hillary for America, which was Hillary Clinton's presidential campaign organization. Mr. Diab has also been charged with knowingly and willfully permitting his name to be used to effect a campaign contribution of another person to the Republican National Committee in 2017.

Finally, Mr. Diab is charged with obstructing the due administration of justice, that is, a pending federal grand jury proceeding.

27

## MULTIPLE DEFENDANTS — MULTIPLE COUNTS

Each count of the indictment charges a separate offense.  Moreover, Mr. El-Saadi and Mr. Diab are each entitled to have the issue of his guilt as to each of the crimes for which he is on trial determined from his own conduct and from the evidence that applies to him as if he were being tried alone.  You should, therefore, consider separately each offense, and the evidence which applies to it, and you should return separate verdicts as to each count of the indictment, as well as to each Defendant.

The fact that you may find any one Defendant guilty or not guilty on any one count of the indictment should not influence your verdict with respect to any other count of the indictment for that Defendant.  Nor should it influence your verdict with respect to the other Defendant as to that count or any other count in the indictment.  Thus, you may find any one or both of the Defendants guilty or not guilty on any one or more counts of the indictment, and you may return different verdicts as to different Defendants and as to different counts.  At any time during your deliberations you may return your verdict of guilty or not guilty with respect to any Defendant on any count.

## ELEMENTS OF EACH OFFENSE: OVERVIEW

I am about to instruct you on the elements of each of the offenses with which Mr. El-Saadi and Mr. Diab are charged.

## CONSPIRACY (18 U.S.C. § 371) — ELEMENTS

Mr. El-Saadi and Mr. Diab are each charged with conspiring to commit offenses against the United States, including knowingly and willfully making campaign contributions in the name of another person and permitting one's name to be used to effect such contributions; knowingly and willfully causing the submission of false, fictitious, and fraudulent statements and representations to the Federal Election Commission; and knowingly causing false entries in records with the intent to impede, obstruct, and influence the proper administration of matters within the Federal Election Commission.  It is against the law to agree with someone to commit those crimes.

The charge of conspiracy to violate the law against conduit contributions is a separate charge from making or effecting conduit contributions, with which Mr. El-Saadi and Mr. Diab are also charged.

You must consider each Defendant separately in deciding whether the government has proved each of the elements as to that person.

The elements of conspiracy, each of which the government must prove beyond a reasonable doubt, are:

First:       The Defendant entered into an agreement with at least one other person to commit at least one of the specific offenses—or object crimes—alleged in the indictment;

Second:   The Defendant knowingly participated in the conspiracy with the intent and required state of mind to commit at least one of those specific offenses; and

Third:      A member of the conspiracy committed at least one overt act in furtherance of the conspiracy.

Now, I will discuss each element in more detail.

30

## FIRST ELEMENT OF CONSPIRACY

The first element of a conspiracy is the existence of an agreement.  The indictment charges that between March 2016 and June 2018, an agreement existed between Ahmad "Andy" Khawaja, Roy Boulos, Rudy Dekermenjian, Mohammad "Moe" Diab, Rani El-Saadi, Stevan Hill, and Thayne Whipple, to commit offenses against the United States.  Specifically, the indictment charges a conspiracy to commit the following three federal crimes, which I will refer to as the "object crimes":

(1)    knowingly and willfully making contributions in the name of another person or permitting one's name to be used to effect such contributions, which contributions aggregated $25,000 or more in calendar years 2016, 2017, or·2018, in violation of 52 U.S.C. §§ 30109(d)(l)(A)(i) and 30122;

(2)    knowingly and willfully causing the submission of material false, fictitious, or fraudulent statements or representations in a matter within the jurisdiction of the executive branch of the government of the United States, in violation of 18 U.S.C. §§1001(a)(2) and 2; and

(3)    with the intent to impede, obstruct, or influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments or agencies of the United States, knowingly causing the concealment, covering up, falsifying, or making of false entries in records, documents, and tangible objects, in violation of 18 U.S.C. §§ 1519 and 2.

There does not have to be a formal agreement or plan, in which everyone involved sat down together and worked out the details.  On the other hand, merely because people get together and talk about common interests or do similar things does not necessarily show that an agreement exists to commit one of the object crimes.  It is enough that the government proves beyond a reasonable doubt that there was a common understanding among those who were involved to commit at least one of the object crimes.  So, the first thing that must be shown is the existence of an agreement.

31

To determine whether there was an agreement between two or more people to commit one of the three object crimes charged in the indictment, you must consider the elements of those crimes.  I will now instruct you on the elements of the alleged object crimes to assist you in determining whether there was an agreement to commit one of those crimes.

## ELEMENTS OF OBJECT CRIME ONE

The first object of the charged conspiracy is the crime of making a contribution in the name of another or knowingly permitting the use of your name to effect the contribution of another, in violation of 52 U.S.C. §§ 30122 and 30109.  The elements of that crime are:

| | |
|---|---|
| <u>First</u>: | A person made a contribution in the name of another person or permitted his name to be used to effect the contribution of another person; |
| <u>Second</u>: | The person named as the contributor was not the true donor; |
| <u>Third</u>: | The contribution was made to a campaign for federal office or a federal political committee; |
| <u>Fourth</u>: | The contribution equaled more than $25,000 in a single calendar year; and |
| <u>Fifth</u>: | That the acts were done knowingly and willfully. |

**WILLFULLY CAUSING AN ACT TO BE DONE**

With respect to object crimes two and three, the indictment charges that the alleged conspirators "caused" others to act.  Under 18 U.S.C. § 2(b), a person may commit a crime without personally committing each of the acts constituting the offense, or without being personally present at the commission of the offense.  A defendant is responsible for an act which he willfully causes to be done if the act would be criminal if performed by him directly or by another.  To "cause" an act to be done means to bring it about.

## ELEMENTS OF OBJECT CRIME TWO

The second object of the conspiracy charged is the crime of causing false statements to be made to the Federal Election Commission, in violation of 18 U.S.C. §§ 1001(a)(2) and 2.

The elements of the second object crime are:

First:        A person caused a statement or representation to be made;

Second:     The statement or representation was false, fictitious, or fraudulent;

Third:       The person knew the statement or representation was untrue when he caused it to be made;

Fourth:     The statement or representation concerned a material fact;

Fifth:        The person who caused the statement or representation to be made acted knowingly and willfully; and

Sixth:       The statement was made about a matter within the jurisdiction of the executive branch of the federal government, that is, in this case, the Federal Election Commission.

A statement is "material" if it has a natural tendency to influence, or is capable of influencing, a decision of the Federal Election Commission.

35

## ELEMENTS OF OBJECT CRIME THREE

The third object of the charged conspiracy is the crime of causing the Federal Election

Commission to make false records, in violation of 18 U.S.C. §§ 1519 and 2.

The elements of the third object crime are:

First:        The person knowingly caused the concealment, covering up, falsifying, or making of false entries in records, documents, or tangible objects;

Second:     The person did so with the intent to impede, obstruct, or influence the investigation or proper administration of a matter;

Third:      The matter was within the jurisdiction of the Federal Election Commission, which is an agency of the United States.

There is no requirement that the matter or investigation have been pending or imminent at

the time of the obstruction, but only that the acts were taken in relation to or in contemplation of

any such matter or investigation.

## SECOND ELEMENT OF CONSPIRACY

If you find that the government has proven beyond a reasonable doubt that the conspiracy charged in the indictment existed, then you must consider the second element of the conspiracy charge. The second element of the conspiracy charge requires the government to prove beyond a reasonable doubt that the Defendant intentionally joined in that agreement.

It is not necessary to find that the Defendant agreed to all the details of the crime, or that the Defendant knew the identity of all the other people the government has claimed were participating in the agreement. A person may become a member of a conspiracy even if that person agrees to play only a minor part, as long as that person understands the unlawful nature of the plan and voluntarily and intentionally joins in it with the intent to advance or further the unlawful object of the conspiracy. Even if the Defendant was not part of the agreement at the very start, he can become a member of a conspiracy later if the government proves beyond a reasonable doubt that he intentionally joined the agreement. Different people may become part of the conspiracy at different times.

But mere presence at the scene of the agreement or of the crime, or merely being with the other participants, does not show that the Defendant knowingly joined in the agreement. Also, unknowingly acting in a way that helps the participants, or merely knowing about the agreement itself, without more, does not make the Defendant part of the conspiracy.

So the second element that must be shown is that the Defendant was part of the conspiracy.

## SINGLE CONSPIRACY

To sustain its burden of proof for the conspiracy charge, the government must prove beyond a reasonable doubt that the single conspiracy alleged in the indictment existed.  Proof of separate or independent conspiracies is not sufficient.

In determining whether or not any single conspiracy has been shown by the evidence in the case you must decide whether common, master, or overall goals or objectives existed which served as the focal point for the efforts and actions of any members to the agreement.  In arriving at this decision you may consider the length of time the alleged conspiracy existed, the mutual dependence or assistance between various persons alleged to have been its members, and the complexity of the goal(s) or objective(s) shown.

A single conspiracy may involve various people at differing levels and may involve numerous transactions that are conducted over some period of time and at various places.  In order to establish a single conspiracy, however, the government need not prove that an alleged co-conspirator knew each of the other alleged members of the conspiracy nor need it establish that an alleged co-conspirator was aware of each of the transactions alleged in the indictment.

Unless the government proves the existence of the single conspiracy described in the indictment beyond a reasonable doubt, you must acquit Mr. El-Saadi and Mr. Diab of this charge.

## THIRD ELEMENT OF CONSPIRACY

The third element of the conspiracy charge requires the government to prove beyond a reasonable doubt that one of the people involved in the conspiracy did something for the purpose of carrying out the conspiracy. This something is referred to as an "overt act." An overt act may itself be a lawful act. The act, however, must be a step in achieving the conspiratorial objectives.

Below, I have provided you a list of the overt acts alleged in the indictment. This list is not evidence, and you must not assume that any facts below are true. The government does not have to prove that all these overt acts were committed, or that the acts were themselves illegal. It is not necessary for you to find that the Defendant performed an overt act in furtherance of the conspiracy. All you need to find is that some member, any member, of the conspiracy performed an overt act in furtherance of the conspiracy of which the Defendant was a member.

The government must prove beyond a reasonable doubt that at least one of these acts was committed by a member of the conspiracy.

1. KHAWAJA arranged to host a private fundraiser for Candidate 1 in Las Vegas, Nevada in September 2016. In order to host the event, KHAWAJA was required to contribute or raise $500,000 for Political Committee 1 and Political Committee 2. Due to his prior contributions and the contribution limits, KHAWAJA was not able to contribute the full amount in his name or his wife's name. As a result, KHAWAJA provided the other co- conspirators with money to contribute to Political Committee 1 and Political Committee 2in their names to meet the fundraising requirement for the event.

2. On or about August 1, 2016, KHAWAJA wrote a $196,000 check to DIAB. On or about August 2, 2016, DIAB wrote a $100,000 check to Political Committee 2 in connection withthe event to be hosted by KHAWAJA. The check falsely represented that it was a contribution from DIAB, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law. This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from DIAB, when it was not.

3. On or about August 6, 2016, KHAWAJA wrote a $30,000 check to HILL, and on or about August 18, 2016, KHAWAJA wrote a $75,000 check to HILL. On or about

August 28, 2016, HILL wrote a $100,000 check to Political Committee 2 in connection with the eventto be hosted by KHAWAJA. The check falsely represented that it was a contribution from HILL, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law. This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from HILL, when it was not.

4.  On or about August 15, 2016, KHAWAJA caused Company A to send a $100,000 check, signed by DIAB, to Co-Conspirator A. On or about August 18, 2016, Co-Conspirator A wrote a $133,000 check to Political Committee 2 in connection with the event to be hostedby KHAWAJA and another political event attended by Co-Conspirator A and KHAWAJA. The check falsely represented that it was a contribution from Co-Conspirator A, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law. This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from Co-Conspirator A, when it was not. On or about August 23, 2016, KHAWAJA wrote a $10,000 check to Co-Conspirator A.

5.  On or about August 17, 2016, KHAWAJA wrote a $44,000 check to WHIPPLE. On or about September 8, 2016, DIAB wrote a $50,000 check to WHIPPLE at KHAWAJA's direction. On or about September 8, 2016, WHIPPLE wrote a $100,000 check to Political Committee 2 in connection with the event to be hosted by KHAWAJA. The check falsely represented that it was a contribution from WHIPPLE, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law. This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from WHIPPLE, when it was not.

6.  On or about August 25, 2016, KHAWAJA caused Company A to wire transfer $294,965 to BOULOS. On or about September 8, 2016, BOULOS wrote a $300,000 check for contribution to Political Committee 2 in connection with the event to be hosted by KHAWAJA. The check falsely represented that it was a contribution from BOULOS, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law. This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from BOULOS, when it was not.

7.  On or about September 9, 2016, KHAWAJA caused Company A to wire transfer $148,965 to EL-SAADI's company. On or about the same date, ELSAADI transferred $150,000 from his company's account to his personal account, and wrote a check for $150,000 to Political Committee 2 in connection with the event to be hosted by KHAWAJA. The check falsely represented that it was a contribution from El-SAADI,

when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law.  This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from EL-SAADI, when it was not.

8. On or about September 9, 2016, KHAWAJA wrote a $185,000 check to DIAB.  On or about the same date, DIAB wrote a $100,000 check to Political Committee 2 in connection with the event to be hosted by KHAWAJA.  The check falsely represented that it was a contribution from DIAB, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law.  This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from DIAB, when it was not.

9. On or about September 9, 2016, KHAWAJA wrote a $130,000 check to Political Committee 2 in connection with the event he was hosting.  The memorandum line of the check stated, "Vegas."'

10. On or about October 2, 2016, KHAWAJA wrote a $165,000 check to DIAB.  On or about October 7, 2016, DIAB wrote a $50,000 check to DEKERMENJIAN at KHAWAJA's direction (and had previously written a $50,000 check to WHIPPLE at KHAWAJA's direction).  On or about October 13, 2016, DEKERMENJIAN wrote a $50,000 check for contribution to Political Committee 2 in connection with the event to be hosted by KHAWAJA.  The check falsely represented that it was a contribution from DEKERMENJIAN, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law.  This caused Political Committee 2 to unwittingly file a false report with the FEC stating that the contribution was from DEKERMENJIAN, when it was not.

11. On or about October 12, 2016, KHAWAJA hosted an event for Candidate 1 in Las Vegas, Nevada, which was rescheduled from its original September 14 date.  BOULOS, DEKERMENJIAN, DIAB, El-SAADI, HILL, NADER, and WHIPPLE attended the eventalong with KHAWAJA.  Co-Conspirator A did not attend the event.

12. In or about March 2017, KHAWAJA caused the contribution of $250,000 to Political Committee 6 on behalf of himself and his wife.

13. On or about June 16, 2017, HILL wrote a $50,000 check to Political Committee 6, which posted on June 21, 2017.  The check falsely represented that it was a contribution from HILL, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution and to avoid and exceed the personal contribution limits set by federal law.  This caused Political Committee 6 to unwittingly file a false report with the FEC stating that the contribution was from HILL, when it was not.  On or about June 19, 2017, KHAWAJA wrote a $60,000

check to HILL.

14. On or about September 14, 2017, WHIPPLE wrote a $100,000 check to Political
Committee 6.  The check falsely represented that it was a contribution from WHIPPLE
and his wife, when it was, in fact, made with monies to be funneled to him by
KHAWAJA for the purpose of making the contribution and to avoid and exceed the
personal contribution limits set by federal law.  This caused Political Committee 6 to
unwittingly file a false report with the FEC stating that the contribution was from
WHIPPLE and his wife, when it was not.  On or about October 13, 2017, KHAWAJA
caused a company he controlled to write a $100,000 check to WHIPPLE.

15. On or about November 29, 2017, KHAWAJA caused a company he controlled to
write a $214,000 check to a company controlled by DIAB.  On or about the same date,
DIAB wrote a $100,000 check to Political Committee 6.  The check falsely represented
that it was a contribution from DIAB, when it was, in fact, made with monies funneled
to him by KHAWAJA for the purpose of making the contribution and to avoid and
exceed the personal contribution limits set by federal law.  This caused Political
Committee 6 to unwittingly file a false report with the FEC stating that the contribution
was from DIAB, when it was not.

16. On or about March 5, 2018, KHAWAJA caused Company A to wire transfer $275,000
to BOULOS.  On or about the same date, BOULOS wrote a $250,000 check to
Political Committee 6.  The check falsely represented that it was a contribution from
BOULOS, when it was, in fact, made with monies funneled to him by KHAWAJA for
the purpose of making the contribution.  This caused Political Committee 6 to
unwittingly file a false report with the FEC stating that the contribution was from
BOULOS, when it was not.

17. On or about January 19, 2018, KHAWAJA wrote a $50,000 check to HILL.  On or
about January 28, 2018, HILL wrote a $50,000 check to Political Committee 7 in
connection with an event hosted by KHAWAJA at his home for Elected Official 1 on
or about March 11, 2018.  The check falsely represented that it was a contribution from
HILL, when it was, in fact, made with monies funneled to him by KHAWAJA for the
purpose of making the contribution and to avoid and exceed the personal contribution
limits set by federal law.  This caused Political Committee 7 to unwittingly file a false
report with the FEC stating that the contribution was from HILL, when it was not.

18. On or about January 19, 2018, KHAWAJA wrote a $45,000 check to
DEKERMEJIAN.  On or about January 30, 2018, DEKERMENJIAN wrote a $50,000
check to Political Committee 7 in connection with an event hosted by KHAWAJA at
his home for Elected Official 1 on or about March 11, 2018.  The check falsely
represented that it was a contribution from DEKERMENJIAN, when it was, in fact,
made with monies funneled to him by KHAWAJA for the purpose of making the
contribution and to avoid and exceed the personal contribution limits set by federal

law.  This caused Political Committee 7 to unwittingly file a false report with the FEC stating that the contribution was from DEKERMENJIAN, when it was not.

19. On or about March 10, 2018, KHAWAJA wrote a $237,000 check to Political Committee 7 in connection with an event hosted by KHAWAJA at his home for Elected Official 1 on or about March 11, 2018.

20. On or about June 20, 2018, KHAWAJA caused a company he controlled to write  a $225,000 check to a company controlled by DIAB.  On or about June 25, 2018, DIAB wrote a $225,000 check to Political Committee 8 in connection with an event featuring Elected Official 2 on or about June 18, 2018.  The check falsely represented that it was a contribution from DIAB, when it was, in fact, made with monies funneled to him by KHAWAJA for the purpose of making the contribution.  This caused Political Committee 8 to unwittingly file a false report with the FEC stating that the contribution was from DIAB, when it was not.  As a result of the contribution, KHAWAJA was invited to the aforementioned event.  Although he did not attend the event itself, he did attend a private meeting with Elected Official 2 on the very same date.

A conspiracy can be proved indirectly by facts and circumstances that lead to a conclusion that a conspiracy existed.  The government must prove that such facts and circumstances existed and that they lead to the conclusion that a conspiracy existed.

In determining whether a conspiracy between two or more persons existed and whether the Defendant was one of its members, you may consider the acts and the statements of any other member(s) of the conspiracy as evidence against the Defendant whether done in or out of his presence while the conspiracy existed.  When persons enter into an agreement to commit a crime, they become agents for each other so that everything that is said or done by one of them in furtherance of that purpose is deemed to be the statement of all who have joined in that conspiracy and is evidence against all of the conspirators.  However, statements of any conspirator that are made before its existence or after its termination may be considered as evidence only against the person making such statements.

43

In summary, a conspiracy is a kind of partnership in crime.  For the Defendant to be convicted of the crime of conspiracy, the government must prove three things beyond a reasonable doubt: first, that between March 2016 through in or about June 2018, there was an agreement to commit an offense against the United States; second, that the Defendant intentionally joined in that agreement; and third, that one of the people involved in the conspiracy did one of the overt acts charged.

## VENUE — CONSPIRACY COUNT

If you find Mr. El-Saadi or Mr. Diab guilty of the conspiracy charge, you must then consider the question of venue—that is, whether the alleged crime was begun, continued, or completed here in the District of Columbia.

For the conspiracy charge, the indictment alleges that some acts in furtherance of the conspiracy occurred here in the District of Columbia. There is no requirement that the entire conspiracy took place here in the District of Columbia. But the government must convince you that some act in furtherance of the conspiracy—that is, either the agreement itself or one of the overt acts—occurred here in the District of Columbia. You will have to indicate on the verdict form whether you have found that the conspiracy was begun, continued, or completed here in the District of Columbia.

Unlike all the other elements that I have described, venue is a fact that the government need prove by only a preponderance of the evidence. This means the government must convince you only that it is more likely than not that at least part of the conspiracy took place here. Remember that all the other elements I have described must be proven beyond a reasonable doubt.

45

## CONDUIT CONTRIBUTIONS — ELEMENTS

In addition, Mr. El-Saadi and Mr. Diab have each been charged with making or effecting a conduit contribution, in violation of 52 U.S.C. §§ 30109(d)(1)(A)(i) and 30122.  Mr. El-Saadi is charged in one count, and Mr. Diab is charged in two counts.  For each count, the government must prove each of the following five elements beyond a reasonable doubt:

First:   The Defendant permitted his name to be used to effect a contribution of another person;

Second:  The Defendant was not the true donor of the contribution;

Third:   The contribution was made to a candidate for federal office or to a federal political committee;

Fourth:  The contribution equaled $25,000 or more during a calendar year; and

Fifth:   The Defendant acted knowingly and willfully.

For purposes of convicting Mr. Diab or Mr. El-Saadi of these charges, you must find beyond a reasonable doubt that the Defendant actually committed the crime of effecting a contribution in the name of another.  Unlike for purposes of the conspiracy count, it is not sufficient to find that the Defendant *conspired* to effect such a contribution; to find the Defendant guilty of the substantive offense, you must find beyond a reasonable doubt that he actually committed the substantive crime.

Mr. El-Saadi is charged with one count of effecting a conduit contribution.  With respect to that charge, the government alleges that Mr. El-Saadi knowingly and willfully permitted his name to be used to effect contributions of another to the Hillary Victory Fund and the Democratic National Committee, which aggregated $25,000 or more in calendar year 2016.

46

Mr. Diab is charged with two counts of effecting a conduit contribution, in violation of the same statutes, 52 U.S.C. §§ 30109(d)(1)(A)(i) and 30122.  With respect to the first charge against Mr. Diab, the government alleges that Mr. Diab knowingly and willfully permitted his name to be used to effect contributions of another to the Hillary Victory Fund and the Democratic National Committee, which aggregated $25,000 or more in calendar year 2016. With respect to the second charge against Mr. Diab, the government alleges that Mr. Diab knowingly and willfully permitted his name to be used to effect contributions of another to the Republican National Committee, which aggregated $25,000 or more in calendar year 2017.

As to each of these counts, the government alleges that Khawaja was the true source of the contributions.

## VENUE — CONDUIT CONTRIBUTIONS

If you find Mr. El-Saadi or Mr. Diab guilty of effecting a conduit contribution, you must then consider the question of venue.  The indictment alleges that the crimes alleged were begun, continued, or completed here in the District of Columbia.  As I have explained, in the conduit contribution charge against Mr. El-Saadi, he is accused of knowingly and willfully permitting his name to be used to effect contributions in the name of another person to the Hillary Victory Fund and the Democratic National Committee.  In the first conduit contribution charge against Mr. Diab, he is accused of knowingly and willfully permitting his name to be used to effect contributions in the name of another person to the Hillary Victory Fund and the Democratic National Committee.  In the second conduit contribution charge against Mr. Diab, he is accused of knowingly and willfully permitting his name to be used to effect contributions in the name of another person to the Republican National Committee.

With respect to each conduit contribution charge, you will have to indicate on the verdict form whether you unanimously agree that the alleged conduit contributions were begun, continued, or completed here in the District of Columbia.

Unlike all the other elements that I have described, this is a fact that the government need prove by only a preponderance of the evidence.  This means the government must convince you only that it is more likely than not that the conduit contribution charge was begun, continued, or completed here.  Remember that all the other elements I have described must be proven beyond a reasonable doubt.

## OBSTRUCTION OF JUSTICE — ELEMENTS

Finally, Mr. Diab is charged with a violation of 18 U.S.C. § 1503. This law makes it a crime for anyone corruptly to influence, obstruct, impede, or endeavor to influence, obstruct, or impede the due administration of justice in connection with a pending judicial proceeding.

To find Mr. Diab guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

First:        There was a proceeding pending before a federal grand jury;

Second:    The Defendant knew of the pending judicial proceeding;

Third:       That the Defendant influenced, obstructed, impeded, or endeavored to influence, obstruct, or impede the due administration of justice in that proceeding; and

Fourth:     The Defendant's act was done "corruptly."

A person acts "corruptly" if he acts knowingly and dishonestly, with the specific intent to subvert or undermine the due administration of justice.

It is not necessary to show that the Defendant was successful in achieving the forbidden objective, only that the Defendant corruptly tried to achieve it in a manner which he knew was likely to influence, obstruct, or impede the due administration of justice as the natural and probable effect of the Defendant's actions.

## UNANIMITY

A verdict must represent the considered judgment of each juror, and in order to return a verdict, each juror must agree on the verdict.  In other words, your verdicts must be unanimous.

## VERDICT FORM EXPLANATION

You will be provided with a Verdict Form for use when you have concluded your deliberations.  The Form is not evidence in this case, and nothing in it should be taken to suggest or convey any opinion by me as to what the verdict should be.  Nothing in the Form replaces the instructions of law I have already given you, and nothing in it replaces or modifies the instructions about the elements which the government must prove beyond a reasonable doubt. The Form is meant only to assist you in recording your verdict.

## EXHIBITS DURING DELIBERATIONS

During the course of this trial, a number of exhibits were admitted in evidence.  I will be sending those exhibits into the jury room with you.  You may examine any or all of them as you consider your verdicts.  Sometimes only those parts of an exhibit that are relevant to your deliberations were admitted.  Where this has occurred, I have required the irrelevant parts of the statement to be blacked out or deleted.  Thus, as you examine the exhibits, and you see or hear a statement where there appear to be omissions, you should consider only the portions that were admitted.  You should not guess as to what has been taken out or redacted.

Please keep in mind that exhibits that were only marked for identification but were not admitted into evidence will not be given to you to examine or consider in reaching your verdict.

If you wish to listen to the audio recording that I have admitted into evidence, you will have access to a computer that can play the recording.

## SELECTION OF FOREPERSON

When you return to the jury room, you should first select a foreperson to preside over your deliberations and to be your spokesperson here in court.  There are no specific rules regarding how you should select a foreperson.  That is up to you.  However, as you go about the task, be mindful of your mission—to reach a fair and just verdict based on the evidence. Consider selecting a foreperson who will be able to facilitate your discussions, who can help you organize the evidence, who will encourage civility and mutual respect among all of you, who will invite each juror to speak up regarding his or her views about the evidence, and who will promote a full and fair consideration of that evidence.

**POSSIBLE PUNISHMENT NOT RELEVANT**

The question of possible punishment of the defendant in the event of a conviction is not a concern of yours and should not enter into or influence your deliberations in any way. The duty of imposing a sentence in the event of a conviction rests exclusively with me. Your verdict should be based solely on the evidence in this case, and you should not consider the matter of punishment at all.

## PUBLICITY, COMMUNICATION, AND RESEARCH

I would like to remind you that, in some cases, although not necessarily this one, there may be reports in the newspaper or on the radio, internet, or television concerning the case. If there should be such media coverage in this case, you may be tempted to read, listen to, or watch it. You must not read, listen to, or watch such reports because you must decide this case solely on the evidence presented in this courtroom. If any publicity about this trial inadvertently comes to your attention, do not discuss it with other jurors or anyone else. Just let me or the Deputy Clerk know as soon after it happens as you can, and I will then briefly discuss it with you.

As you retire to the jury room to deliberate, I also need to remind you of an instruction I gave you at the beginning of and during the trial. During deliberations, you may not communicate with anyone not on the jury about this case. This includes any electronic communication such as email or text or any blogging about the case. In addition, you may not conduct any independent investigation of any kind during deliberations. This means you may not conduct any research in person or electronically via the internet or in another way.

**COMMUNICATIONS BETWEEN COURT AND JURY DURING DELIBERATIONS**

If it becomes necessary during your deliberations to communicate with me, you may send a note by the Deputy Clerk or marshal, signed by your foreperson or by one or more members of the jury.  No member of the jury should try to communicate with me except by such a signed note, and I will never communicate with any member of the jury on any matter concerning the merits of this case, except in writing or orally here in open court.

Bear in mind also that you are never, under any circumstances, to reveal to any person— not the Deputy Clerk, the marshal, or me—how jurors are voting until after you have reached a unanimous verdict.  This means that you should never tell me, in writing or in open court, how the jury is divided on any matter—for example, 6-6 or 7-5 or 11-1, or in any other fashion— whether the vote is for conviction or acquittal or on any other issue in the case.

## ATTITUDE AND CONDUCT OF JURORS IN DELIBERATIONS

The attitude and conduct of jurors at the beginning of their deliberations are matters of considerable importance.  It may not be useful for a juror, upon entering the jury room, to voice a strong expression of an opinion on the case or to announce a determination to stand for a certain verdict.  When one does that at the outset, a sense of pride may cause that juror to hesitate to back away from an announced position after a discussion of the case.  Furthermore, many juries find it useful to avoid an initial vote upon retiring to the jury room.  Calmly reviewing and discussing the case at the beginning of deliberations is often a more useful way to proceed.  Remember that you are not partisans or advocates in this matter, but you are judges of the facts.

### EXCUSING ALTERNATE JURORS

The last thing I must do before you begin your deliberations is to excuse the alternate jurors.  As I told you before, the selection of alternates was an entirely random process; it's nothing personal.  We selected four seats to be the alternate seats before any of you entered the courtroom.  One juror has been excused during the course of this trial.  Since the rest of you have remained healthy and attentive, I can now excuse those jurors in seats **eleven**, **thirteen**, and **fourteen.**

As you three leave, I am going to ask you to hand your notebooks and badges to the Deputy Clerk.  I must also note that it is possible, though unlikely, that we will need to summon you back to rejoin the jury in case something happens to a regular juror.  Since that possibility exists, I am also going to instruct you not to discuss the case with anyone until we call you.  My earlier instruction on use of the Internet still applies; do not research this case or communicate about it on the Internet.  In all likelihood, we will be calling you to tell you there has been a verdict and you are now free to discuss the case; there is, however, the small chance that we will need to bring you back on to the jury.  Thank you very much for your service.

## CLOSING REMARKS

I'm now going to excuse you to meet briefly with the Deputy Clerk, and then to begin your deliberations.  You may take your notebooks with you if you wish.  You will receive the instructions I have given you, the verdict form, and all the exhibits.  Thank you again for your attention and service.  As soon as you receive your copy of the instructions from the Deputy Clerk, you may begin deliberating.